IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE ANTONIO BROWN, | ) | |
| AIS 264844, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-CV-811-KFP |
| | ) | [WO] |
| THERESA DYER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Plaintiff Maurice Brown, formerly a pretrial detainee at the Russell County Jail, filed this 42 U.S.C. § 1983 Complaint challenging the adequacy of medical care and treatment he received while at the jail in September 2018.[1] The named defendants are Steve Johnson, Jail Administrator; Theresa Dyer, a Licensed Practical Nurse employed by the jail; and Dr. Daryl Ellis, a physician employed by the jail.[2] Brown seeks monetary damages and injunctive relief for the alleged violation of his constitutional rights. Doc. 1 at 4. As Brown does not state otherwise and upon a liberal construction of the Complaint, the Court considers Brown's Complaint to seek relief from Defendants in their individual and official

---

[1] The Court considers September 13, 2018, to be the filing date of the Complaint. Although the Clerk stamped the Complaint "filed" on September 20, 2018, Plaintiff signed his Complaint on September 13, 2018, and a pro se inmate's complaint is deemed by law to have been filed the date it is delivered to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 271–272 (1988).

[2] Plaintiff and all Defendants filed written consents, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, to have a United States Magistrate Judge "conduct all proceedings in this case, including trial, the entry of a final judgment, and post-judgment proceedings." Doc. 14.

capacities. Defendants filed an Answer and Special Report with supporting evidentiary materials, including affidavits and certified medical records. Doc. 11. Defendants deny violating Brown's constitutional rights and maintain that he received appropriate medical treatment at all relevant times.[3]

The Court previously entered an Order granting Brown an opportunity to respond to Defendants' report and advising that his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 12 at 3. The Order cautioned that, unless "sufficient legal cause" was shown within fifteen days of the Order, the Court "may at any time thereafter and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion to dismiss or a motion for summary judgment, whichever is proper, and (2) after considering any response [allowed by the] order, rule on the motion in accordance with law." *Id.*

Brown filed a Motion to File for Ruling/Trial, docketed by the Clerk as a response to Defendants' report. Doc. 17. He filed another document styled "Violation of Rights," which was also docketed as a response to Defendants' report. Doc. 15. These responses were neither sworn nor made under penalty of perjury; therefore, they are not affidavits required by Fed. R. Civ. P. 56(e) and do not satisfy the verification requirement of 28 U.S.C. § 1746. Accordingly, they do not constitute evidence that creates a genuine dispute of material fact that the Court may consider on a dispositive motion. *See Holloman v.*

---

[3] Defendants raise Brown's failure to exhaust his administrative remedies as an affirmative defense to claims against Defendant Johnson, the jail administrator. However, the Court's resolution of Brown's allegations against Nurse Dyer and Dr. Ellis on the merits pretermits any discussion of Brown's alleged failure to exhaust administrate remedies with respect to claims against Johnson.

*Jacksonville Hous. Auth.*, No. 06-10108, 2007 WL 245555, at *2 (11th Cir. Jan. 30, 2007) (per curiam) (holding that unsworn statements, even from pro se parties, should not be considered on summary judgment) (citation omitted).

The Court now treats Defendants' Special Report as a motion for summary judgment and, upon consideration of the motion and supporting evidentiary materials, concludes the motion is due to be GRANTED.

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion and identifying portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is then similarly required to cite to portions of the record that show the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

## III.   DISCUSSION

### A.   Sovereign Immunity for Official Capacity Claims

Defendants maintain that they are state actors in their operation of the jail and entitled to sovereign immunity. Doc. 20 at 10–11. *See Free v Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that suits against sheriffs in official capacities are effectively suits against the entity they represent so that State of Alabama is real party in interest); *Carr v. City of Florence, Ala*., 916 F.2d 1521, 1527 (11th Cir. 1990) (holding sheriff's Eleventh Amendment immunity extends to deputies because of traditional function under Alabama law as sheriff's alter ego); *Lancaster v. Monroe Cty., Ala.*, 116 F.3d 1419, 1430–31 (11th Cir. 1997) (holding that county jailers, like sheriffs and deputies, are entitled to Eleventh Amendment immunity for official capacity claims).

Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated it. *Pennhurst State Sch. & Hosp. v. Halderman*, 465

U.S. 89, 100 (1984) (waiver); *Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996) (abrogation). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr*, 916 F.2d at 1525). Accordingly, to the extent Brown sues Defendants in their official capacities, they are entitled to sovereign immunity for claims seeking monetary damages. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in official capacity).

**B.      Injunctive Relief**

Brown makes a request for injunctive relief against Defendants; however, because the record indicates that he is no longer incarcerated, the request is moot. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979). "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (citation and quotation marks omitted); *see Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (observing that "[l]ogically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past") (citation and quotation marks omitted). Because Brown is no longer in jail, his request for equitable relief is moot.

**C.    Qualified Immunity for Individual Capacity Claims of Deliberate Indifference and Retaliation**

With respect to Plaintiff's claims for damages against Defendants in their individual capacities, Defendants argue they are entitled to qualified immunity. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and immunity questions should be resolved at the earliest possible stage in litigation. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Here, there is no dispute that Defendants were acting within the course and scope of their discretionary authority. Therefore, Brown must allege facts that, when read in a light most favorable to him, show Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy this burden, Brown must show two things: (1) a defendant committed a constitutional violation and (2) the constitutional right violated was "clearly established." *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have

placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and internal quotation marks omitted) (alteration in original). "Clearly established law" means (1) a materially similar case has already been decided; (2) a broader, clearly established principle should control the novel facts of the situation; or (3) the conduct so obviously violates the constitution that prior case law is unnecessary. *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted). Qualified immunity provides "breathing room to make reasonable but mistaken judgments" and "protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and internal quotation marks omitted). The Eleventh Circuit has repeatedly stated that qualified immunity "almost always protects the defendant" if "case law, in factual terms, has not staked out a bright line." *Gaines*, 871 F.3d at 1210 (citations and internal quotation marks omitted). "Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements, the defendants are entitled to qualified immunity, and the court may analyze the elements in any order deemed appropriate. *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

### 1.    Deliberate Indifference

As a pretrial detainee, Brown's claims are subject to review under the due process clause of the Fourteenth Amendment, which prohibits punishment of those who have not

been convicted of a crime, rather than the Eighth Amendment, which governs claims of convicted inmates. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (holding that claims of mistreatment by arrestees or pretrial detainees are governed by the Fourteenth Amendment's due process clause instead of the Eighth Amendment's cruel and unusual punishment clause, which applies to convicted prisoners). However, the Eleventh Circuit has long held that the standard is the same, so law involving prison inmates applies equally to arrestees or pretrial detainees. *Cottrell*, 85 F.3d at 1490; *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1574 (11th Cir. 1985) (holding there is no meaningful difference between analysis required by Fourteenth Amendment and that required by Eighth Amendment); *see also Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1279 (11th Cir. 2017) (holding that pre-trial detainee's claims challenging medical treatment are evaluated under same standard as prisoner's claim of inadequate care under Eighth Amendment and specifically refusing to extend objective reasonableness standard of pretrial detainee's excessive force claim set forth in *Kingsley v. Hendrickson,* 576 U.S. 389 (2015)). Accordingly, the Court will apply the deliberate indifference standard to Brown's claim of inadequate medical treatment.

To prevail on a claim of denial of medical treatment, an inmate must show the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000). Medical treatment of prisoners violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental

fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quotation marks and citation omitted). A prison official is not "deliberately indifferent" unless he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (finding, under *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment") (citation and internal quotations omitted). "A defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference." *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016). Within the Eleventh Circuit, medical malpractice and negligence do not constitute deliberate indifference:

> Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

Thus, to demonstrate deliberate indifference to a serious medical need, Brown must show (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and his injury. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). To make this showing, Brown must establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (finding that for liability to attach defendant must know and disregard excessive risk to prisoner's health or safety). Regarding the objective component, a plaintiff must first show an objectively serious medical need, followed by a response by defendants inadequate enough to constitute an unnecessary and wanton infliction of pain, not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law. *Taylor*, 221 F.3d at 1258 (citations omitted). For the required subjective intent, a plaintiff must show the public official acted with an attitude of "deliberate indifference," which requires two things: an awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and drawing of the inference. *Taylor*, 221 F.3d at 1258 (internal citations and quotations omitted). Thus, deliberate indifference occurs only when a defendant knows of and disregards an excessive risk to inmate health or safety; is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and draws that inference. *Farmer*, 511 U.S. at 837. An "official's failure to alleviate a significant risk that he should have perceived but did

not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Further, neither a difference of opinion on appropriate treatment nor the fact that the treatment was ineffective gives rise to a deliberate indifference claim. *Hamm*, 774 F.2d at 1575 (holding mere fact that inmate desires different mode of diagnosis does not amount to deliberate indifference); *Adams*, 61 F.3d at 1545 (stating that whether additional diagnostic techniques or forms of treatment should have been used "is a classic example of a matter for medical judgment" and not a basis for Eighth Amendment liability) (citation omitted).

### (a)   Nurse Dyer and Dr. Ellis

In June 2018 Brown had x-rays taken for a leg condition from a previous injury caused by a bullet. Based on those x-rays, Dr. Ellis informed jail officials that Brown needed surgery. The jail released Brown from custody for medical reasons on June 28, 2018, with an ankle monitor and instructions to contact a vascular surgeon regarding his leg. Brown alleges the information failed to apprise him of what he should do upon his release from custody. Two months after his release, Brown was returned to jail custody. He asserts that Defendants failed to provide him with adequate medical care and treatment after his reincarceration despite their knowledge of his leg condition. He also speculates that Defendants denied him adequate medical treatment because of a prior lawsuit he filed against medical staff at the jail. Doc. 1 at 2–3; Doc. 1-1 at 1–2.

Dr. Ellis and Nurse Dyer submitted affidavits in response to Brown's Complaint. After reviewing these materials, the undersigned finds them to be corroborated by the

objective medical records created contemporaneously with treatment. Those records reflect that Brown, while incarcerated, had a CT scan on June 27, 2018, at a free-world hospital. Doc. 11-6; Doc. 11-7 at 5. The referring physician discussed the results of the scan with Dr. Ellis and noted that Brown would be referred to a vascular physician. Doc. 11-6 at 2. The next day, the Russell County District Court entered a medical release order, and Brown was released from jail on a personal recognizance bond. Doc. 11-8 at 2–3, 4–11. Upon release, medical staff provided Brown with his medical records and instructions to obtain medical care for his leg. Doc. 11-7 at 5; *see also* Doc. 11-10 at 2. Two months later on August 31, 2018, Brown was re-booked into the jail on a bail jumping charge.[4] Docs. 11-3, 11-9. Within twenty-four hours of his return to custody, which coincided with Labor Day weekend, Brown submitted a medical request for a bottom bunk profile, a "no greens" profile, and sleep and pain medication. Doc. 11-10 at 2. He submitted additional medical requests on September 2 and 3 inquiring about a response to his previous request and stating that he was waiting on pain medication. Doc. 11-10 at 2. Nurse Dyer responded to Brown's requests on September 4 and advised that he had been scheduled for an appointment with Dr. Ellis. Docs. 11-4; 11-7 at 5; 11-10 at 2–4. Dr. Ellis evaluated Brown on September 6 for his complaints of gluteal pain and swelling, noting that he did not receive a professional medical evaluation for his leg during his release from jail. Docs. 11-5 at 3; 11-7 at 5.

---

[4] The record reflects Brown was arrested at 8:35 p.m. on August 31, 2018, by law enforcement officials with the Phenix City Police Department and released the same day to the custody of the Russell County Sheriff's Office at 8:55 p.m. Doc. 11-9.

Regarding Brown's requests for medication, the record shows Nurse Dyer made repeated inquiries of Brown about the medication he had taken while out on bond. Doc. 11-10 at 4–5, 8. Brown indicated initially that family members had given him pain medication, but, in response to further inquiries by Nurse Dyer, he advised that he had not taken any medication and also that he had taken over-the-counter medication. *Id.* On September 14, Nurse Dyer advised Brown that a message had been sent to Dr. Ellis regarding approval for pain medication.[5] *Id.* at 10. Medical records reflect that the jail's medical staff continued to evaluate and treat him for his complaints of leg pain, which included prescriptions on September 17 for sleep and pain medication and scheduling a CT scan on October 23. Docs. 11-4 at 4–5, 11-5 at 3–4, 11-7 at 5–8.

Assuming Brown's leg condition constituted a serious medical need, he cannot show on this summary judgment record that Dr. Ellis or Nurse Dyer acted with deliberate indifference to his medical needs. Under the circumstances of this case, the Court concludes that the course of treatment undertaken by medical personnel at the Russell County Jail did not violate Brown's constitutional rights, as it was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate, not ideal, medical care. *Estelle*, 429 U.S. at 103–105. An inmate has no right to a specific form of medical treatment as long as the treatment provided is reasonable.

---

[5] As noted above, Brown submitted his Complaint to jail officials for mailing on September 13, 2018. Docs. 1 at 4; 1-1 at 1.

*Harrison v. Barkley*, 219 F.3d 132, 140 (2d Cir. 2000). To the extent Brown's claim is based on his own disagreement with Nurse Dyer, Dr. Ellis, or other jail medical staff about his medical treatment, the claim does not amount to deliberate indifference. *Estelle*, 429 U.S. at 107; *Hamm*, 774 F.2d at 1575; *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted) (holding that "mere disagreement" about proper medical treatment is insufficient to show a constitutional violation).

Here, nothing about Brown's treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505 (citations and internal quotations omitted). Other than his conclusory assertions that he was not provided with proper medical attention, Brown presents no evidence that Nurse Dyer or Dr. Ellis knew their treatment of Brown created a substantial risk to his health and that, with that knowledge, they consciously disregarded that risk. Rather, the undisputed evidence shows Nurse Dyer and Dr. Ellis responded to Brown's medical inquiries and provided medical care for him consistent with his medical history. Their responses to his condition were reasonable and appropriate, and there is no evidence that Brown required emergency care upon his return to the jail or that the treatment he received was "so cursory as to amount to no treatment at all." *See McElligott*, 182 F.3 at 1255.

Even if Brown's treatment was considered less than adequate or medical malpractice, as set forth above, "[a]ccidents, mistakes, negligence, and medical malpractice are not constitutional violation[s] merely because the victim is a prisoner." *Harris v.*

14

*Coweta Cty.*, 21 F.3d 388, 393 (11th Cir. 1994) (quotation marks and citation omitted). Further, while there is no indication any Defendant was responsible for Brown's court-ordered medical release from jail, he has not demonstrated that this course of action resulted in a violation of his constitutional rights. *See Proietty v. Randolph Cty., Alabama*, No. 1:04-CV-2352-TMP, 2006 WL 8436601, at *7 (N.D. Ala. June 2, 2006), *report and recommendation adopted,* No. CV 04-TMP-2352-E, 2006 WL 8436667 (N.D. Ala. Aug. 21, 2006) (emphasis in original) (finding that no Eleventh Circuit precedent requires sick or injured inmates to be treated before release and that "Eighth Amendment prohibits *holding* inmates in custody under circumstances that deny them the opportunity to seek medical care") (emphasis in original).

Based on the record before it, the Court concludes Brown's challenge to his medical care and treatment does not constitute deliberate indifference. His conclusory allegations of inadequate medical treatment do not create a question of fact in the face of contradictory, contemporaneously-created jail and medical records. *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (holding that, although plaintiff attempted to overcome summary judgment by offering his own sworn statements, contemporaneous medical records and opinions of the examining medical professionals showed them to be baseless); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) (explaining that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); *Feliciano v. City of Miami Beach*,

707 F.3d 1244, 1253–54 (11th Cir. 2013) (same). Because the record is devoid of evidence showing that any medical professional acted with deliberate indifference to a serious medical need experienced by Brown, Nurse Dyer and Dr. Ellis are granted qualified immunity on his deliberate indifference claim.

### (b)     Officer Steve Johnson

The Defendants' evidentiary materials show Officer Johnson is not involved in decisions regarding medical treatment of inmates at the jail and that jail staff members defer to and rely on the professional opinions of the nurses and doctors at the jail. Doc. 11-3 at 4. Medical care is available twenty-four hours a day for emergencies and on a regularly scheduled basis for non-emergencies. Doc. 11-11 at 14. Sick call is conducted Monday through Sunday, and inmates must submit an inquiry for medical evaluation to be seen during sick call. *Id*. Sick call is conducted by a licensed practical nurse or a registered nurse. *Id*. To see the doctor, a nurse must refer the inmate. *Id*. Additionally, not only does the evidence show that Johnson plays no role in medical treatment at the jail, Brown makes no specific allegations against Johnson. As a result, because Brown has not even alleged— much less shown—that Johnson was aware of facts establishing "an objectively serious medical need" or that he consciously disregarded a known serious risk to Brown's health, Brown has failed to establish a deliberate indifference claim against Johnson. *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that official must know of and then disregard an excessive risk of harm for liability to attach); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of serious

condition, not just symptoms, and ignore known risk to serious condition); *Cameron v. Allen*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007) (citation omitted) (stating the law "does not impose upon [jailers] a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong"). For these reasons, Defendant Johnson is granted qualified immunity on the deliberate indifference claim.

## 2. Retaliation

In the Complaint, Brown makes a conclusory and speculative allegation that he was denied adequate medical treatment because he previously filed a civil rights action against jail medical staff. The Court construes this allegation as a claim that Defendants retaliated against him for exercising his rights of free speech under the First Amendment. The Defendants deny engaging in any conduct violative of Brown's constitutional rights, and nothing in the record reflects that Brown's medical treatment was adversely affected by the exercise of his free speech rights when he filed the previous lawsuit.

Federal courts must carefully scrutinize retaliation claims brought by prisoners challenging actions of correctional personnel. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care" because the claims are easily fabricated and pose a substantial risk of unwarranted judicial intrusion into prison administration, as any adverse action by a prison official can be characterized as "constitutionally proscribed retaliatory act." *Dawes v.*

*Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). To proceed on a retaliation claim and withstand summary judgment, an inmate must establish three elements: (1) constitutionally protected speech; (2) an adverse action such that the allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in the speech; and (3) a causal relationship between the retaliatory action and the protected speech. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). Regarding the causal relationship element, an inmate must show that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse action would not have occurred. *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected, and that this conduct . . . was a 'motivating factor'" behind the challenged action of the defendants. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142 n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the required elements. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (observing that courts are "careful to require non-conclusory allegations" because prisoner retaliation claims are prone to abuse). If an inmate meets his burden with

appropriate evidence, the burden of production shifts to the defendant to show that he "would have reached the same decision as to [plaintiff's treatment] even in the absence of the protected conduct." *Mt. Healthy City School Dist. Bd. of Educ.*, 429 U.S. at 287. "Under the *Mt. Healthy* approach, if the government official can prove that [he] would have taken the adverse action in the absence of the plaintiff's protected conduct, [he] cannot be held liable." *Smith*, 532 F.3d at 1278 n.22 (quotation marks and citation omitted).

Brown alleges Defendants deprived him of fair and adequate medical care for filing a prior lawsuit, thus satisfying the first element of his retaliation claim, i.e., his exercise of a protected right. *Smith*, 532 F.3d at 1277. The second element requires Brown to demonstrate that he suffered an adverse action—the denial of medical treatment—and that this denial "would likely deter a [prisoner] of ordinary firmness" from filing legal actions challenging the constitutionality of the medical treatment received. *Id*. This "presents an objective standard and a factual inquiry." *Id*. There is nothing before this Court indicating that Nurse Dyer, Dr. Ellis, or any other jail staff member denied medical treatment to Brown; instead, the medical records refute this allegation. Moreover, the Court does not find the challenged action would deter an ordinary inmate from filing lawsuits.

Even if Brown could establish the first two elements, he fails to satisfy the third element, a causal connection between his constitutionally protected activity and the alleged adverse actions of Defendants. The causal connection inquiry focuses on a defendant's "subjective motivation," so this Court must address whether the defendants were subjectively motivated to deny Brown medical treatment for filing a previous lawsuit.

*Thaddeus-X*, 175 F.3d at 399; *Smith*, 532 F.3d at 1278. This inquiry is resolved by most courts under the burden-shifting formula of *Mt. Healthy*, which requires a plaintiff to first meet his burden of establishing that the protected conduct was a motivating factor behind any harm—an element the Court assumes exists—followed by a shifting of the burden of production to defendant to show he would have taken the same action in the absence of the protected activity. *Thaddeus-X*, 175 F.3d at 399.

Defendants deny any conduct violative of Brown's constitutional rights and explain Brown's medical care and treatment as medically necessary based on professional judgment. The medical records support these assertions. Brown offers only his conclusory and speculative allegation of the ultimate fact that he was retaliated against for his litigation activities, and this allegation is insufficient to defeat summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997), *abrogated by Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019) n.6. The record before the Court is devoid of admissible or potentially admissible evidence from which a reasonable fact finder could infer the required motivating factor for the alleged retaliation. Additionally, when taken as a whole, the circumstances do not support making such an inference. Accordingly, Defendants are granted qualified immunity on Brown's retaliation claim.

**IV.    CONCLUSION**

For the reasons stated above, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. 11) is GRANTED and that this case is DISMISSED with prejudice, with no costs taxed except for the filing fee assessed Plaintiff.

A separate final judgment will be entered.

DONE this 1st day of September, 2021.


/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE